FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEBRASKA

05 FEB 17  PM 1:02

OFFICE OF THE CLERK

| | |
|---|---|
| WAYNE ABRAHAMSON, BERGMAN BROTHERS, and WAYNE CARLSON,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER, and DOUGLAS SCOTT LATTER,<br><br>Defendants. | CASE NO. 4: O5CV3039<br><br>**NOTICE OF REMOVAL AND REQUEST FOR PLACE OF TRIAL**<br><br>JUDGE KOPF<br><br>**MAGISTRATE JUDGE PIESTER** |

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA:

Defendants, First National Bank of Holdrege ("FNBH"), Eric Titus ("Titus"), Douglas Scott Latter ("Latter"), Kenneth Slominski ("Slominski"), Ronald Sterr ("Sterr"), Tim Wiebe ("Wiebe"), Jeanette Harden ("Harden"), Kirk Riley ("Riley"), and Mark Utter ("Utter")(collectively the "Defendants") hereby file their Notice of Removal of this action from the District Court of Phelps County, Nebraska, and state as follows:

1.  The Defendants are all of the defendants in Civil Action No. CI04-209 filed on December 23, 2004, in the District Court of Phelps County, Nebraska. Pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446, the Defendants remove this action to the United States District Court for the District of Nebraska, which is the judicial district in which the action is pending.

2.  All of the Defendants in this action join in filing this Notice of Removal.

3.  The grounds for removal of this action are as follows:

a.      This is an action of a civil nature over which this Court would have original jurisdiction under 28 U.S.C. § 1331 in that it arises under the laws of the United States within the meaning of that statute.

b.      In addition, the Plaintiffs allege that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") at 18 U.S.C. § 1961 *et seq.* Accordingly, this Court would have original jurisdiction over this action pursuant to 18 U.S.C. § 1964(c).

c.      The other grounds for relief asserted by the Plaintiffs in their action all arise out of the same set of facts and are part of the same case and controversy, so that this Court has supplemental jurisdiction over them within the meaning of 28 U.S.C. § 1367(a).

Therefore, this is an action over which this Court would have had original jurisdiction had it been filed initially in this Court and removal to this Court is proper under the provisions of 28 U.S.C. § 1441(a) and/or (b).

4.      The Complaint and Jury Demand was filed by the Plaintiffs in the District Court of Phelps County, Nebraska, on December 23, 2004. Plaintiffs filed their Amended Complaint and Jury Demand in the District Court of Phelps County, Nebraska, on January 19, 2005. Plaintiff's Second Amended Complaint and Jury Demand was filed in the District Court of Phelps County, Nebraska, on February 11, 2005. Service was effected on the Defendants on the following dates: FNBH, Slominski, Wiebe, and Latter, January 21, 2005; Harden, January 22, 2005; Titus, Sterr and Utter, January 25, 2005; and Riley, February 16, 2005.

5.      None of the Defendants in this action were served with process prior to January 21, 2005.

6.     This Notice of Removal is filed within thirty (30) days of the date that any Defendant in this action first received the Complaint "by service or otherwise" within the meaning of 28 U.S.C. § 1446(b), and it is therefore timely under 28 U.S.C. § 1446(b)

7.     Pursuant to the provisions of 28 U.S.C. § 1446(a), the Defendants attach to this Notice of Removal and incorporate by reference copies of the following papers, which are all of the process, pleadings and orders served on or filed by them prior to their removal of this action:

a.     The Plaintiffs' Complaint and Jury Demand filed on December 23, 2004, in the District Court of Phelps County, Nebraska, Case No. CI04-209, which is marked as Exhibit "A."

b.     The Plaintiffs' Amended Complaint and Jury Demand filed on January 19, 2005, in the District Court of Phelps County, Nebraska, Case No. CI04-209, which is marked as Exhibit "B."

c.     The Plaintiffs' Second Amended Complaint and Jury Demand filed on February 11, 2005, in the District Court of Phelps County, Nebraska, Case No. CI04-209, which is marked as Exhibit "C."

d.     The various Summonses served on the Defendants, which are marked as Exhibits "D" through "L."

8.     Written notice of the filing of this Notice of Removal will be served on counsel for Plaintiff as required by law.

9.     A true and correct copy of this Notice of Removal will be filed with the Clerk of the District Court of Phelps County, Nebraska, as required by law, and served upon counsel for the Plaintiff.

## REQUEST FOR PLACE OF TRIAL

Defendants request that the trial of this matter be at Lincoln, Nebraska.

WHEREFORE, Defendants, First National Bank of Holdrege, Eric Titus, Douglas Scott Latter, Kenneth Slominski, Ronald Sterr, Tim Wiebe, Jeanette Harden, Kirk Riley, and Mark Utter request that this case be removed from the District Court of Phelps County, Nebraska, where it is now pending, to this Court, and that this Court accept jurisdiction of this action and that this action be placed upon the docket of this Court for further proceedings as if the case had been originally instituted in this Court.

DATED this 17th day of February, 2005.

FIRST NATIONAL BANK OF HOLDREGE,
ERIC TITUS, DOUGLAS SCOTT LATTER,
JEANETTE HARDEN, KIRK RILEY and
MARK UTTER, Defendants


By: /s/ Matthew W. Lytle
    William F. Hargens, NE #16578
    Robert J. Bothe, NE #15018
    James J. Niemeier, NE #18838
    Matthew W. Lytle, NE #22928
    McGrath North Mullin & Kratz, PC LLO
    Suite 3700 First National Tower
    1601 Dodge St.
    Omaha, Nebraska 68102
    (402) 341-3070
    (402) 341-0216 fax
    whargens@mnmk.com
    rbothe@mnmk.com
    jniemeier@mnmk.com
    mlytle@mnmk.com

*Attorneys for Defendants First National Bank of Holdrege, Eric Titus and Douglas Scott Latter*

*Attorneys for Defendants Jeanette Harden, Mark Utter and Kirk Riley for Purposes of This Filing Only*

RONALD    STERR,    and    TIM    WIEBE,
Defendants


By:/s/Timothy A. Shultz
   Timothy A. Shultz (#22533)
   Parker & Hay, LLP
   1129 S.W. Wanamaker Road
   Topeka, Kansas  66605
   (785) 228-5736


KENNETH SLOMINSKI, Defendant


By:/s/ Claude E. Berreckman, Jr.
   Claude E. Berreckman, Jr. (#17049)
   Berreckman & Berreckman, P.C.
   801 Meridian Avenue
   P.O. Box 214
   Cozad, Nebraska  69130-0214
   (308) 784-2040

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the following listed below by United States mail, postage prepaid, this 17th day of February, 2005.

Steven P. Vinton
BACON & VINTON, LLC
416 10th Street
P.O. Box 208
Gothenburg, NE 69138

P. Stephen Potter
P. STEPHEN POTTER, P.C.
822 Lake Avenue
P.O. Box 348
Gothenburg, NE 69138

/s/ Matthew W. Lytle
Matthew W. Lytle

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

| | |
|---|---|
| WAYNE ABRAHAMSON, BERGMAN BROTHERS, WAYNE CARLSON and STAN OURADA | CASE NO. CI04- 209 |
| Plaintiffs, | |
| vs. | COMPLAINT AND JURY DEMAND |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, TIM WIEBE, JEANETTE HARDEN KIRK RILEY, MARK UTTER, and DOUGLAS SCOTT LATTER | |
| Defendants. | |

COMES NOW Wayne Abrahamson, Bergman Brothers, Wayne Carlson and Stan Ourada (herein "Plaintiffs"), by and through their attorneys Bacon & Vinton, LLC and P. Stephen Potter, PC, and for their Complaint against Defendant First National Bank of Holdrege ("FNB Holdrege"), Defendant Kenneth Slominsky, Defendant Eric Titus, Defendant Tim Wiebe, Defendant Jeanette Harden, Defendant Kirk Riley, Defendant Mark Utter and Defendant Douglas Scott Latter, state and allege as follows:

**PARTIES, RELEVANT NON-PARTIES JURISDICTION, VENUE**

1.     Plaintiff Wayne Abrahamson ("Abrahmson") is a resident of Borger, Texas. Plaintiff Bergman Brothers ("Bergman") is a Nebraska General Partnership with its principal place of business in Phelps County, Nebraska. Plaintiff Wayne Carlson ("Carlson") is a resident of Holdrege, Phelps County, Nebraska. Plaintiff Stan Ourada ("Ourada") is a resident of Holdrege, Phelps County, Nebraska.

2.     First National Bank of Holdrege ("FNB Holdrege") is a national banking corporation with offices in Holdrege, Nebraska. At times material to this action, FNB Holdrege

FILED

DEC 2 3 2004

L. NELSON



EXHIBIT "A"

has acted through its officers and agents, including, Defendants Kenneth Slominsky and Eric Titus.

3.     Kenneth Slominski ("Slominski") is the former president of FNB Holdrege, and is named in his former capacity and individually.

4.     Eric Titus is a current officer and director of FNB Holdrege and is named in this capacity and individually.

5.     Tim Wiebe ("Wiebe") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

6.     Jeanette Harden ("Harden") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

7.     Kirk Riley ("Riley") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

8.     Mark Utter ("Utter") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

9.     Douglas Scott Latter ("Latter") is a current officer and employee of FNB Holdrege and is named in this capacity and individually.

10.     Plaintiff Abrahamson is a former shareholder of Abrahamson Farms, Inc., which corporation was liquidated. Pursuant to the terms of the Plan of Liquidation of Abrahamson Farms, Inc., all claims of Abrahamson Farms, Inc. against all Defendants set forth herein were distributed and transferred to Plaintiff Abrahamson.

11.     DFF, Inc. (herein "Damrow Finance"), was an affiliate of Damrow Cattle and provided financing to Damrow Cattle's customers.

12.     Carter Feeders, Inc. (herein "Carter") is a Nebraska Corporation which from 1989 through 1999 owned and operated a cattle feed yard near Orleans, Nebraska.

13.     Pursuant to Neb. Rev. Stat. §§ 25-403.01 and 25-403.02, Phelps County is the appropriate venue for this matter.

## FACTS COMMON TO ALL CLAIMS

14.     Based upon information and belief, the following facts are stated. At all times material, Damrow Cattle, Inc. ("Damrow Cattle") operated a feedlot feeding its own cattle and cattle owned by third parties.

15.     FNB Holdrege provided Damrow Finance the funds that Damrow Finance loaned to Damrow Cattle's customers so they could finance the purchase, ownership, and feeding of cattle at Damrow Cattle's feedlot(s). FNB Holdrege also provided Damrow Cattle the financing Damrow Cattle needed to procure cattle and to meet its working capital needs.

16.     In and about 1997, FNB Holdrege sold to First National Bank of Omaha ("FNB Omaha") participations in loans made by FNB Holdrege to Damrow Cattle and Damrow Finance. Under the terms of their participation agreement(s), the participations had the effect of reducing FNB Holdrege's loan balances owed by Damrow Cattle and Damrow Finance.

17.     In early 2000, FNB Holdrege approached FNB Omaha about having FNB Omaha refinance loans made by FNB Holdrege to Damrow Cattle and Damrow Finance.

18.     At the request and inducement of FNB Holdrege, FNB Omaha refinanced certain FNB Holdrege's loan to Damrow Cattle and Damrow Finance (hereinafter the "FNB Omaha/Damrow Cattle Take Out Loan").

20.     At or near the time FNB Holdrege induced FNB Omaha to refinance the Damrow Cattle loans, FNB Omaha represented to Damrow Cattle that FNB Omaha would continue to

provide financing to Damrow Cattle. In reliance on these representations, Damrow Cattle entered into agreements to purchase wet corn and dry corn from various producers of corn, including Plaintiffs. Damrow Cattle also entered into arrangements to feed cattle purchased by various farmers and investors, including Plaintiff Carlson.

21.     In inducing these loans, FNB Holdrege intentionally provided commercial information which was inaccurate. FNB Holdrege knew and it was also reasonably foreseeable that the commercial information supplied by FNB Holdrege in connection with Damrow Cattle financing would be given to and relied upon by third parties, including Plaintiffs. Plaintiffs were reasonably entitled to rely upon FNB Holdrege's commercial information. In addition FNB Holdrege and the other Defendants caused certain loan proceeds to be misapplied, resulting in the liabilities of Damrow Cattle to be increased.

22.     At all times material, FNB Holdrege knew about, coordinated and actively arranged the making of the Damrow Cattle Loan.

23.     On January 11, 2001, within 8 months of making the FNB Omaha/Damrow Cattle Take Out Loan, First National Bank Omaha withdrew its loan commitment to Damrow Cattle and Damrow Cattle was placed in receivership by the District Court of Phelps County, Nebraska. At the time such receivership was filed, Plaintiffs became aware that Damrow Cattle may be unable to perform under its contracts with Plaintiffs for the purchase of corn and/or the feeding of cattle.

24.     Upon information and belief, both prior to and on January 11, 2001, FNB Holdrege and Defendants Slominsky, Titus, Wiebe, Harden, Riley, Utter and Latter knew, participated and otherwise organized a fraud upon Damrow Cattle's creditors, including FNB Omaha and Plaintiffs as a participant in the FNB Omaha/Damrow Cattle Take Out Loan. More

specifically, Defendants knew that Damrow Cattle's operating loan would be terminated. Based upon concealments, conspiracies, misrepresentations and actively participating in fraud, Defendants misled Plaintiffs into entering into contracts with Damrow Cattle for the purchase of corn and/or the feeding of cattle.

25.     FNB Holdrege and Defendant Wiebe, in 1999 caused Damrow Cattle loan proceeds to be improperly paid to Carter, in the amount of approximately $245,000.00.

## DAMAGES SUFFERED BY PLAINTIFF ABRAHAMSON

26.     In reliance upon the commitment to provide it financing referenced above, Damrow Cattle entered into a contract with Plaintiff Abrahamson to purchase and feed feeder cattle for Plaintiff Abrahamson, and to purchase 4,658.53 bushels of dry corn from Plaintiff Abrahamson. In further reliance upon the agreement referenced above, Plaintiff Abrahamson paid Damrow Cattle the sum of $46,975.85 to purchase and feed cattle for Plaintiff Abrahamson, and Plaintiff Abrahamson delivered 4,658.53 bushels of dry corn to Damrow Cattle. Plaintiff Abrahamson further paid Damrow Cattle $4,411.79 to feed the cattle purchased for Plaintiff Abrahamson.

27.     The actions of FNB Omaha in withdrawing its commitment to finance Damrow Cattle, caused Damrow Cattle to be unable to pay for the corn Plaintiff Abrahamson delivered to Damrow, and resulted in the cattle being sold with the proceeds paid to FNB Omaha.

28.     Plaintiff Abrahamson received the sum of $21,678.97 from FNB Omaha as a partial refund of the money Plaintiff Abrahamson paid to Damrow Cattle to purchase and feed such cattle. Plaintiff Abrahamson has therefore been damaged for the difference between the amounts paid by Plaintiff Abrahamson for the cattle and feeding, and the amount received by Plaintiff Abrahamson from FNB Omaha, in the amount of $29,708.85. Plaintiff Abrahamson has

not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel at the time Plaintiff Abrahamson delivered such corn, for a total value of $9,596.57. In addition, Plaintiff Abrahamson has been damaged in the amount of the profits he expected to make in the cattle feeding venture.

## DAMAGES SUFFERED BY PLAINTIFF BERGMAN

29.     In reliance upon the commitment to provide it financing referenced above, Damrow Cattle entered into a contract with Plaintiff Bergman to purchase 18,958.00 bushels of dry corn. In further reliance upon the agreement referenced above, Plaintiff Bergman delivered 18,958.00 bushels of dry corn to Damrow Cattle.

30.     The actions of FNB Omaha in withdrawing its commitment to finance Damrow Cattle, caused Damrow Cattle to be unable to pay for the corn Plaintiff Bergman delivered to Damrow Cattle.

31.     Plaintiff Bergman has not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel at the time Plaintiff Bergman delivered such corn, for a total value of $39,053.48.

## DAMAGES SUFFERED BY PLAINTIFF CARLSON

32.     In reliance upon the commitment to provide it financing referenced above, Damrow Cattle entered into a contract with Plaintiff Carlson to purchase 17,162.13 bushels of dry corn from Plaintiff Carlson. In further reliance upon the agreement referenced above, Plaintiff Carlson delivered 17,162.13 bushels of dry corn to Damrow Cattle.

33.     The actions of FNB Omaha in withdrawing its commitment to finance Damrow Cattle, caused Damrow Cattle to be unable to pay for the corn Plaintiff Carlson delivered to Damrow Cattle.

34.     Plaintiff Carlson has not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel at the time Plaintiff Carlson delivered such corn, for a total value of $35,353.99.

## DAMAGES SUFFERED BY PLAINTIFF OURADA

35.     In reliance upon the commitment to provide it financing referenced above, Damrow Cattle entered into a contract with Plaintiff Ourada to purchase 29,042.40 bushels of dry corn. In further reliance upon the agreement referenced above, Plaintiff Ourada delivered 29,042.40 bushels of dry corn to Damrow Cattle.

36.     The actions of FNB Omaha in withdrawing its commitment to finance Damrow Cattle, caused Damrow Cattle to be unable to pay for the corn Plaintiff Ourada delivered to Damrow Cattle.

37.     Plaintiff Ourada has not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel at the time Plaintiff Ourada delivered such corn, for a total value of $59,827.34.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

38.     The Plaintiffs realleges and incorporates by reference herein all of the foregoing paragraphs of this Complaint.

39.     On or about April 20, 2000, FNB Omaha entered into an agreement with Damrow Cattle, whereby FNB Omaha agreed to finance certain corn and feeder cattle purchases by Damrow Cattle.

40.     The Defendants' actions in supplying false and misleading information, and causing loan proceeds and cattle sale proceeds to be misapplied constitute a breach of the contract between FNB Holdrege and FNB Omaha.

41.     Plaintiffs are third party beneficiaries of the contract between FNB Holdrege and Damrow Cattle and are entitled to recover their damages resulting from the breach of such contract from the Defendants.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

42.     Plaintiffs reallege and incorporate by reference herein all the foregoing paragraphs of this Complaint.

43.     The Defendant, FNB Holdrege, received the benefit of delivery of the corn by each of the Plaintiffs, and from the investment in cattle by Plaintiff Abrahamson. The Defendant FNB Holdrege knowingly accepted the benefits of the delivery of such corn and the investment in cattle by the Plaintiffs.

44.     It is inequitable and unconscionable to allow FNB Holdrege to receive the benefits of the corn delivered by the Plaintiffs and the money invested for the feeding of cattle by the Plaintiff Abrahamson, and FNB Holdrege should be required to repay to the Plaintiffs the reasonable value of the corn delivered and the amount of money invested in cattle by the Plaintiff Abrahamson.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Misrepresentation / Fraudulent Inducement)

45.     Plaintiffs reallege and incorporate by reference herein all the foregoing paragraphs of this Complaint.

46.     To induce Plaintiffs to sell corn to Damrow Cattle and provide funds to purchase cattle by Damrow Cattle, Defendants directly and indirectly delivered materially inaccurate and otherwise false documents and information upon which Plaintiffs reasonably relied in entering into said contracts.

47.    Upon information and belief, Defendants knowingly and intentionally misrepresented the financial condition of Damrow Cattle and concealed their pattern of misconduct intending to fraudulently induce Plaintiffs into selling corn to Damrow Cattle.

48.    These representations included, without limitation, verbal and written statements to Damrow Cattle, upon which Plaintiffs relied, and verbal statements to third persons, which persons the Defendants knew would provide such information to Plaintiffs, and which third persons did, in fact, provide such information to Plaintiffs.

49.    Defendants made these material misrepresentations to Damrow Cattle and Plaintiffs, as positive assertions knowing said misrepresentations to be false when made and/or with a reckless disregard for their truth or falsity.

50.    Defendants fraudulently made said representations with the knowledge and/or intention that Damrow Cattle and Plaintiffs, would rely upon them and said representations were specifically intended to and did induce Plaintiffs to enter into contracts with Damrow Cattle.

51.    Had Plaintiffs been aware of the true facts and information that Defendants misrepresented, concealed, and otherwise failed and neglected to disclose, Plaintiffs would not have entered into the corn sale contracts and would have refused to do business with Damrow Cattle. But for the Defendants' conduct, Plaintiffs would not have sustained its damages alleged herein.

52.    As a direct and proximate result of the foregoing, Plaintiffs has been damaged by its losses in connection with his sale of corn to Damrow Cattle and payment of funds to Damrow Cattle for the purchase of cattle.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Concealment / Fraudulent Nondisclosure)

53.     Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

54.     Defendants knowingly and intentionally concealed and/or suppressed material information from Damrow Cattle and Plaintiffs, regarding the true financial condition of Damrow Cattle, which information was known by Defendants. More specifically, Defendants knew and concealed or suppressed from Plaintiffs certain liabilities and facts, which were not within the reasonably diligent attention, observation, and judgment of Plaintiffs including at least the following: (1) liabilities of Damrow Cattle to Damrow Finance; (2) liabilities of Damrow Finance to FNB Holdrege; (3) liabilities of Damrow Cattle's customers to Damrow Finance; (4) liabilities of Damrow Cattle's customers to FNB Holdrege; and (5) the misdirection of the cash flow at Damrow Cattle.

55.     Defendants had a duty to disclose the true facts concerning the nature of Damrow Cattle's true financial condition, and knew or should have known that ascertainment of these true facts was not within reach of the reasonable diligent attention, observation, and judgment of Plaintiffs because of Defendants' affirmative acts and efforts to conceal the same.

56.     Plaintiffs were not on notice of, and were not aware of the false misleading nature of Defendants' concealments and/or of the existence of the true facts which had been concealed and/or suppressed.

57.     Defendants' intentional nondisclosures and concealments of material information from Plaintiffs were designed to mislead and prevent Plaintiffs from learning the true financial condition of Damrow Cattle.

58.     Defendants' intentional nondisclosures and concealments were intended to and did induce Plaintiffs into entering into corn and cattle contracts with Damrow Cattle.

59.     As a direct and proximate result of Defendants' knowing and intentional nondisclosures and concealments, Plaintiffs was reasonably misled about the true financial condition of Damrow Cattle.

60.     As a direct and proximate result of the foregoing, Plaintiffs has been damaged by its losses in connection with the corn and cattle contracts.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

61.     Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

62.     Defendants negligently and/or recklessly, directly and/or recklessly, directly and/or indirectly, supplied false and misleading documents and information to Damrow Cattle and Plaintiffs and/or failed to exercise reasonable care, caution and competence in obtaining and communication these documents and information to FNB Omaha, Damrow Cattle and Plaintiffs.

63.     Defendants knew or should have known about the material facts and information concerning improper loan activities regarding Damrow Cattle both before and after Plaintiffs entered into the corn sale contract with Damrow Cattle.

64.     Plaintiffs justifiably and reasonable relied on the documents and information to its damage and detriment.

65.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged by its losses in connection with the corn sale contract.

## SIXTH CLAIM FOR RELIEF
### (Conspiracy to Defraud Plaintiffs)

66.    Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

67.    Defendants conspired with one another to develop and implement plans to defraud Plaintiffs regarding the true nature of Damrow Cattle's financial condition, misapplication of Proceeds and insolvency.

68.    The purpose and intent of Defendants' preconceived plan and conspiracy was to induce Plaintiffs into selling corn to Damrow Cattle.

69.    Defendants carried out this preconceived plan by unlawfully concealing and misrepresenting the material facts and information regarding Damrow Cattle's true financial condition, including misapplication of Proceeds and insolvency.

## SEVENTH CLAIM FOR RELIEF
### (Violation of Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et. seq.*)

70.    Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

71.    As applicable herein, the term "mailed" refers to the United States' Mails and/or any other common carrier. The term "wired" or "faxed" means the use of interstate and/or intrastate wires.

72.    FNB Holdrege is a "person" as that term is defined in the RICO statute, 18 U.S.C. §1961(3).

73.    FNB Holdrege is a federally chartered banking association and is an "enterprise" as that term is defined in the RICO statute, 18 U.S.C. §1961.

74.    Damrow Cattle and DFF are corporations organized under the laws of the State of Nebraska, and each constitute an "enterprise" as that term is defined under the RICO statute, 18 U.S.C. §1961.

75.    Upon information and belief FNB Holdrege and the other Defendants have engaged in more than two predicate acts as hereinabove alleged which constitute a pattern of racketeering activity as those terms are defined under the RICO statute, 18 U.S.C. §1961. Upon information and belief from as early as 1994 until April 2000, FNB Holdrege engaged in and committed various offenses involving acts which are prohibited under, *inter alia,* 18 U.S.C. §1941 (mail fraud), 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. §1344 (financial institution fraud) which further constitute a patter of racketeering activity by and through a series of predicate acts which have continuity and a relationship to each other and that amounted to a threat of continued, unlawful and illegal activity. Upon information and belief FNB Holdrege has and other named Defendants have, through a series of predicate acts and pattern of racketeering activity, all of which were in violation of 18 U.S.C. §1962, caused Plaintiffs to be damaged in an amount to be proved at trial.

76.    Upon information and belief FNB Holdrege, and the other Defendants, have conducted and participated, directly and indirectly, in the conduct of business with Damrow Cattle and Plaintiffs through a series of predicate acts and a pattern of racketeering activity, all in violation of the RICO statute, 18 U.S.C. §1962, which has caused and continues to cause damage to Plaintiffs in an amount to be proved at trial.

77.    Upon information and belief FNB Holdrege and the other named Defendants have conspired to violate 18 U.S.C. §1962(b) and 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d), all as alleged herein.

78.     As the direct and proximate result of the foregoing, Plaintiffs have sustained and will continue to sustain damages. Plaintiffs are entitled to recover treble damages and the costs of this suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. §1964(c).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, respectfully requests that the Court enter judgment against Defendant First National Bank of Holdrege, Defendant Kenneth Slominsky, Defendant Eric Titus, Defendant Wiebe, Defendant Harden, Defendant Riley, Defendant Utter and Defendant Latter jointly and severally, as follows: (a) for special damages suffered by all Plaintiffs as proven at trial; (b) for general damages suffered by all Plaintiffs as proven at trial; (c) for pre-judgment interest and post-judgment interest in favor of all Plaintiffs as allowed by law; (d) for treble damages and attorneys' fees and costs incurred by all Plaintiffs; and (e) for such other and further relief, including consequential damages in favor of all Plaintiffs, deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs respectfully demand trial by jury.

Dated this 23rd day of December, 2004.

WAYNE ABRAHAMSON, BERGMAN
BROTHERS, WAYNE CARLSON, and
STAN OURADA, Plaintiffs,

By: _____
Steven P. Vinton, #17817
BACON & VINTON, LLC
Attorneys at Law
416 10th Street
PO Box 208
Gothenburg, NE 69138
(308) 537-7161
and,

_____
P. Stephen Potter, #13371
P. STEPHEN POTTER, P.C.
Attorney at Law
822 Lake Avenue
PO Box 348
Gothenburg, NE 69138
(308) 537-7119
Attorneys for Plaintiffs

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

| | |
|---|---|
| WAYNE ABRAHAMSON, BERGMAN BROTHERS, and WAYNE CARLSON | CASE NO. CI04-209 |
| Plaintiffs, | |
| vs. | AMENDED COMPLAINT AND JURY DEMAND |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBB, JEANETTE HARDEN, KIRK RILEY, MARK UTTER, and DOUGLAS SCOTT LATTER | |
| Defendants. | |

COMES NOW Wayne Abrahamson, Bergman Brothers, and Wayne Carlson (herein "Plaintiffs"), by and through their attorneys Bacon & Vinton, LLC and P. Stephen Potter, PC, and for their Amended Complaint against Defendant First National Bank of Holdrege ("FNB Holdrege"), Defendant Kenneth Slominsky, Defendant Eric Titus, Defendant Ronald Sterr, Defendant Tim Wiebe, Defendant Jeanette Harden, Defendant Kirk Riley, Defendant Mark Utter and Defendant Douglas Scott Latter, state and allege as follows:

## PARTIES, RELEVANT NON-PARTIES JURISDICTION, VENUE

1.     Plaintiff Wayne Abrahamson ("Abrahmson") is a resident of Borger, Texas. Plaintiff Bergman Brothers ("Bergman") is a Nebraska General Partnership with its principal place of business in Phelps County, Nebraska. Plaintiff Wayne Carlson ("Carlson") is a resident of Holdrege, Phelps County, Nebraska. Plaintiff Stan Ourada ("Ourada") is a resident of Holdrege, Phelps County, Nebraska.

2.     First National Bank of Holdrege ("FNB Holdrege") is a national banking corporation with offices in Holdrege, Nebraska. At times material to this action, FNB Holdrege

FILED

JAN 1 9 2005

BLANTER L. NELSON



EXHIBIT "B"

has acted through its officers and agents, including, Defendants Kenneth Slominsky and Eric Titus.

3.      Kenneth Slominski ("Slominski") is the former president of FNB Holdrege, and is named in his former capacity and individually.

4.      Eric Titus is a current officer and director of FNB Holdrege and is named in this capacity and individually.

5.      Ronald Sterr ("Sterr") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

6.      Tim Wiebe ("Wiebe") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

7.      Jeanette Harden ("Harden") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

8.      Kirk Riley ("Riley") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

9.      Mark Utter ("Utter") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

10.     Douglas Scott Latter ("Latter") is a current officer and employee of FNB Holdrege and is named in this capacity and individually.

11.     Plaintiff Abrahamson is a former shareholder of Abrahamson Farms, Inc., which corporation was liquidated. Pursuant to the terms of the Plan of Liquidation of Abrahamson Farms, Inc., all claims of Abrahamson Farms, Inc. against all Defendants set forth herein were distributed and transferred to Plaintiff Abrahamson.

12.     DFF, Inc. (herein "Damrow Finance"), was an affiliate of Damrow Cattle and provided financing to Damrow Cattle's customers.

13.     Carter Feeders, Inc. (herein "Carter") is a Nebraska Corporation which from 1989 through 1999 owned and operated a cattle feed yard near Orleans, Nebraska.

14.     Pursuant to Neb. Rev. Stat. §§ 25-403.01 and 25-403.02, Phelps County is the appropriate venue for this matter.

## FACTS COMMON TO ALL CLAIMS

15.     Based upon information and belief, the following facts are stated. At all times material, Damrow Cattle, Inc. ("Damrow Cattle") operated a feedlot feeding its own cattle and cattle owned by third parties.

16.     FNB Holdrege provided Damrow Finance the funds that Damrow Finance loaned to Damrow Cattle's customers so they could finance the purchase, ownership, and feeding of cattle at Damrow Cattle's feedlot(s). FNB Holdrege also provided Damrow Cattle the financing Damrow Cattle needed to procure cattle and to meet its working capital needs.

17.     In and about 1997, FNB Holdrege sold to First National Bank of Omaha ("FNB Omaha") participations in loans made by FNB Holdrege to Damrow Cattle and Damrow Finance. Under the terms of their participation agreement(s), the participations had the effect of reducing FNB Holdrege's loan balances owed by Damrow Cattle and Damrow Finance.

18.     In early 2000, FNB Holdrege approached FNB Omaha about having FNB Omaha refinance loans made by FNB Holdrege to Damrow Cattle and Damrow Finance.

19.     At the request and inducement of FNB Holdrege, FNB Omaha refinanced certain FNB Holdrege's loan to Damrow Cattle and Damrow Finance (hereinafter the "FNB Omaha/Damrow Cattle Take Out Loan").

20.   At or near the time FNB Holdrege induced FNB Omaha to refinance the Damrow Cattle loans, FNB Omaha represented to Damrow Cattle that FNB Omaha would continue to provide financing to Damrow Cattle. In reliance on these representations, Damrow Cattle entered into agreements to purchase wet corn and dry corn from various producers of corn, including Plaintiffs. Damrow Cattle also entered into arrangements to feed cattle purchased by various farmers and investors, including Plaintiff Abrahamson.

21.   In inducing these loans, FNB Holdrege intentionally provided commercial information which was inaccurate. FNB Holdrege knew and it was also reasonably foreseeable that the commercial information supplied by FNB Holdrege in connection with Damrow Cattle financing would be given to and relied upon by third parties, including Plaintiffs. Plaintiffs were reasonably entitled to rely upon FNB Holdrege's commercial information. In addition FNB Holdrege and the other Defendants caused certain loan proceeds to be misapplied, resulting in the liabilities of Damrow Cattle to be increased.

22.   At all times material, FNB Holdrege knew about, coordinated and actively arranged the making of the Damrow Cattle Loan.

23.   On January 11, 2001, within 8 months of making the FNB Omaha/Damrow Cattle Take Out Loan, First National Bank Omaha withdrew its loan commitment to Damrow Cattle and Damrow Cattle was placed in receivership by the District Court of Phelps County, Nebraska. At the time such receivership was filed, Plaintiffs became aware that Damrow Cattle may be unable to perform under its contracts with Plaintiffs for the purchase of corn and/or the feeding of cattle.

24.   Upon information and belief, both prior to and on January 11, 2001, FNB Holdrege and Defendants Slominsky, Titus, Sterr, Wiebe, Harden, Riley, Utter and Latter knew,

participated and otherwise organized a fraud upon Damrow Cattle's creditors, including FNB

Omaha and Plaintiffs as a participant in the FNB Omaha/Damrow Cattle Take Out Loan. More

specifically, Defendants knew that Damrow Cattle's operating loan would be terminated. Based

upon concealments, conspiracies, misrepresentations and actively participating in fraud,

Defendants misled Plaintiffs into entering into contracts with Damrow Cattle for the purchase of

corn and/or the feeding of cattle.

25.     FNB Holdrege and Defendants Sterr and Wiebe, in 1999 caused Damrow Cattle

loan proceeds to be improperly paid to Carter, in the amount of approximately $245,000.00,

causing a further inability of Damrow Cattle to meet its financial commitments.

## DAMAGES SUFFERED BY PLAINTIFF ABRAHAMSON

26.     In reliance upon the commitment to provide it financing referenced above,

Damrow Cattle entered into a contract with Plaintiff Abrahamson to purchase and feed feeder

cattle for Plaintiff Abrahamson, and to purchase 4,658.53 bushels of dry corn from Plaintiff

Abrahamson. In further reliance upon the agreement referenced above, Plaintiff Abrahamson

paid Damrow Cattle the sum of $46,975.85 to purchase and feed cattle for Plaintiff Abrahamson,

and Plaintiff Abrahamson delivered 4,658.53 bushels of dry corn to Damrow Cattle. Plaintiff

Abrahamson further paid Damrow Cattle $4,411.79 to feed the cattle purchased for Plaintiff

Abrahamson.

27.     The actions of FNB Omaha in withdrawing its commitment to finance Damrow

Cattle, caused Damrow Cattle to be unable to pay for the corn Plaintiff Abrahamson delivered to

Damrow, and resulted in the cattle being sold with the proceeds paid to FNB Omaha.

28.     Plaintiff Abrahamson received the sum of $21,678.97 from FNB Omaha as a

partial refund of the money Plaintiff Abrahamson paid to Damrow Cattle to purchase and feed

such cattle. Plaintiff Abrahamson has therefore been damaged for the difference between the amounts paid by Plaintiff Abrahamson for the cattle and feeding, and the amount received by Plaintiff Abrahamson from FNB Omaha, in the amount of $29,708.85. Plaintiff Abrahamson has not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel at the time Plaintiff Abrahamson delivered such corn, for a total value of $9,596.57. In addition, Plaintiff Abrahamson has been damaged in the amount of the profits he expected to make in the cattle feeding venture.

## DAMAGES SUFFERED BY PLAINTIFF BERGMAN

29.     In reliance upon the commitment to provide it financing referenced above, Damrow Cattle entered into a contract with Plaintiff Bergman to purchase 18,958.00 bushels of dry corn. In further reliance upon the agreement referenced above, Plaintiff Bergman delivered 18,958.00 bushels of dry corn to Damrow Cattle.

30.     The actions of FNB Omaha in withdrawing its commitment to finance Damrow Cattle, caused Damrow Cattle to be unable to pay for the corn Plaintiff Bergman delivered to Damrow Cattle.

31.     Plaintiff Bergman has not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel at the time Plaintiff Bergman delivered such corn, for a total value of $39,053.48.

## DAMAGES SUFFERED BY PLAINTIFF CARLSON

32.     In reliance upon the commitment to provide it financing referenced above, Damrow Cattle entered into a contract with Plaintiff Carlson to purchase 17,162.13 bushels of dry corn from Plaintiff Carlson. In further reliance upon the agreement referenced above, Plaintiff Carlson delivered 17,162.13 bushels of dry corn to Damrow Cattle.

33.    The actions of FNB Omaha in withdrawing its commitment to finance Damrow Cattle, caused Damrow Cattle to be unable to pay for the corn Plaintiff Carlson delivered to Damrow Cattle.

34.    Plaintiff Carlson has not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel at the time Plaintiff Carlson delivered such corn, for a total value of $35,353.99.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

35.    The Plaintiffs realleges and incorporates by reference herein all of the foregoing paragraphs of this Complaint.

36.    On or about April 14, 2000, FNB Omaha entered into an agreement with FNB Holdrege and Damrow Cattle, whereby FNB Omaha agreed to refinance Damrow Cattle's indebtedness to FNB Holdrege and agreed to finance certain cattle and feed purchases by Damrow Cattle for the benefit of Plaintiffs. The actions and misrepresentations of FNB Holdrege and the other Defendants as set forth above caused FNB Omaha to withdraw its loan commitment to Damrow Cattle. The withdrawal of the loan commitment, caused Damrow Cattle to be unable to perform under its contracts with Plaintiffs to feed cattle and further caused Damrow Cattle to be unable to repay Plaintiffs for the prepaid feed.

37.    The Defendants' actions in supplying false and misleading information, and causing loan proceeds and cattle sale proceeds to be misapplied constitute a breach of the contract described above.

38.    Plaintiffs are third party beneficiaries of the contract between FNB Holdrege and Damrow Cattle and are entitled to recover their damages resulting from the breach of such contract from the Defendants.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

39.    Plaintiffs reallege and incorporate by reference herein all the foregoing paragraphs of this Complaint.

40.    The Defendant, FNB Holdrege, received the benefit of delivery of the corn by each of the Plaintiffs, and from the investment in cattle by Plaintiff Abrahamson. The Defendant FNB Holdrege knowingly accepted the benefits of the delivery of such corn and the investment in cattle by the Plaintiffs.

41.    It is inequitable and unconscionable to allow FNB Holdrege to receive the benefits of the corn delivered by the Plaintiffs and the money invested for the feeding of cattle by the Plaintiff Abrahamson, and FNB Holdrege should be required to repay to the Plaintiffs the reasonable value of the corn delivered and the amount of money invested in cattle by the Plaintiff Abrahamson.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Misrepresentation / Fraudulent Inducement)

42.    Plaintiffs reallege and incorporate by reference herein all the foregoing paragraphs of this Complaint.

43.    To induce Plaintiffs to sell corn to Damrow Cattle and provide funds to purchase cattle by Damrow Cattle, Defendants directly and indirectly delivered materially inaccurate and otherwise false documents and information upon which Plaintiffs reasonably relied in entering into said contracts.

44.    Upon information and belief, Defendants knowingly and intentionally misrepresented the financial condition of Damrow Cattle and concealed their pattern of misconduct intending to fraudulently induce Plaintiffs into selling corn to Damrow Cattle.

45.     These representations included, without limitation, verbal and written statements to Damrow Cattle, which verbal and written statements were then provided by Damrow Cattle to Plaintiffs and upon which Plaintiffs relied, and verbal statements made to third persons, which persons the Defendants knew would provide such information to Plaintiffs, and which third persons did, in fact, provide such information to Plaintiffs.

46.     Defendants made these material misrepresentations to Damrow Cattle and Plaintiffs, as positive assertions knowing said misrepresentations to be false when made and/or with a reckless disregard for their truth or falsity.

47.     Defendants fraudulently made said representations with the knowledge and/or intention that Damrow Cattle and Plaintiffs, would rely upon them and said representations were specifically intended to and did induce Plaintiffs to enter into contracts with Damrow Cattle.

48.     Had Plaintiffs been aware of the true facts and information that Defendants misrepresented, concealed, and otherwise failed and neglected to disclose, Plaintiffs would not have entered into the corn sale contracts and would have refused to do business with Damrow Cattle. But for the Defendants' conduct, Plaintiffs would not have sustained its damages alleged herein.

49.     As a direct and proximate result of the foregoing, Plaintiffs has been damaged by its losses in connection with his sale of corn to Damrow Cattle and payment of funds to Damrow Cattle for the purchase of cattle.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Concealment / Fraudulent Nondisclosure)

50.     Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

51.     Defendants knowingly and intentionally concealed and/or suppressed material information from Damrow Cattle and Plaintiffs, regarding the true financial condition of Damrow Cattle, which information was known by Defendants. More specifically, Defendants knew and concealed or suppressed from Plaintiffs certain liabilities and facts, which were not within the reasonably diligent attention, observation, and judgment of Plaintiffs including at least the following: (1) liabilities of Damrow Cattle to Damrow Finance; (2) liabilities of Damrow Finance to FNB Holdrege; (3) liabilities of Damrow Cattle's customers to Damrow Finance; (4) liabilities of Damrow Cattle's customers to FNB Holdrege; and (5) the misdirection of the cash flow at Damrow Cattle.

52.     Defendants had a duty to disclose the true facts concerning the nature of Damrow Cattle's true financial condition, and knew or should have known that ascertainment of these true facts was not within reach of the reasonable diligent attention, observation, and judgment of Plaintiffs because of Defendants' affirmative acts and efforts to conceal the same.

53.     Plaintiffs were not on notice of, and were not aware of the false misleading nature of Defendants' concealments and/or of the existence of the true facts which had been concealed and/or suppressed.

54.     Defendants' intentional nondisclosures and concealments of material information from Plaintiffs were designed to mislead and prevent Plaintiffs from learning the true financial condition of Damrow Cattle.

55.     Defendants' intentional nondisclosures and concealments were intended to and did induce Plaintiffs into entering into corn and cattle contracts with Damrow Cattle.

56.     As a direct and proximate result of Defendants' knowing and intentional nondisclosures and concealments, Plaintiffs was reasonably misled about the true financial condition of Damrow Cattle.

57.     As a direct and proximate result of the foregoing, Plaintiffs has been damaged by its losses in connection with the corn and cattle contracts.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

58.     Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

59.     Defendants negligently and/or recklessly, directly and/or recklessly, directly and/or indirectly, supplied false and misleading documents and information to Damrow Cattle and Plaintiffs and/or failed to exercise reasonable care, caution and competence in obtaining and communication these documents and information to FNB Omaha, Damrow Cattle and Plaintiffs.

60.     Defendants knew or should have known about the material facts and information concerning improper loan activities regarding Damrow Cattle both before and after Plaintiffs entered into the corn sale contract with Damrow Cattle.

61.     Plaintiffs justifiably and reasonable relied on the documents and information to its damage and detriment.

62.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged by its losses in connection with the corn sale contract.

## SIXTH CLAIM FOR RELIEF
### (Conspiracy to Defraud Plaintiffs)

63.     Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

64.    Defendants conspired with one another to develop and implement plans to defraud Plaintiffs regarding the true nature of Damrow Cattle's financial condition, misapplication of Proceeds and insolvency.

65.    The purpose and intent of Defendants' preconceived plan and conspiracy was to induce Plaintiffs into selling corn to Damrow Cattle.

66.    Defendants carried out this preconceived plan by unlawfully concealing and misrepresenting the material facts and information regarding Damrow Cattle's true financial condition, including misapplication of Proceeds and insolvency.

### SEVENTH CLAIM FOR RELIEF
#### (Violation of Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et. seq.*)

67.    Plaintiffs reallege and incorporate by reference all the foregoing paragraphs of this Complaint.

68.    As applicable herein, the term "mailed" refers to the United States' Mails and/or any other common carrier. The term "wired" or "faxed" means the use of interstate and/or intrastate wires.

69.    FNB Holdrege is a "person" as that term is defined in the RICO statute, 18 U.S.C. §1961(3).

70.    FNB Holdrege is a federally chartered banking association and is an "enterprise" as that term is defined in the RICO statute, 18 U.S.C. §1961.

71.    Upon information and belief FNB Holdrege and the other Defendants have engaged in more than two predicate acts as hereinabove alleged which constitute a pattern of racketeering activity as those terms are defined under the RICO statute, 18 U.S.C. §1961. Upon information and belief from as early as 1994 until January 11, 2001, FNB Holdrege engaged in

and committed various offenses involving acts which are prohibited under, *inter alia*, 18 U.S.C. §1941 (mail fraud), 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. §1344 (financial institution fraud) which further constitute a patter of racketeering activity by and through a series of predicate acts which have continuity and a relationship to each other and that amounted to a threat of continued, unlawful and illegal activity. Upon information and belief FNB Holdrege has and other named Defendants have, through a series of predicate acts and pattern of racketeering activity, all of which were in violation of 18 U.S.C. §1962, caused Plaintiffs to be damaged in an amount to be proved at trial.

72.     Upon information and belief FNB Holdrege, and the other Defendants, have conducted and participated, directly and indirectly, in the conduct of business with Damrow Cattle and Plaintiffs through a series of predicate acts and a pattern of racketeering activity, all in violation of the RICO statute, 18 U.S.C. §1962, which has caused and continues to cause damage to Plaintiffs in an amount to be proved at trial.

73.     Upon information and belief FNB Holdrege and the other named Defendants have conspired to violate 18 U.S.C. §1962(b) and 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d), all as alleged herein.

74.     As the direct and proximate result of the foregoing, Plaintiffs have sustained and will continue to sustain damages. Plaintiffs are entitled to recover treble damages and the costs of this suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. §1964(c).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, respectfully requests that the Court enter judgment against Defendant First National Bank of Holdrege, Defendant Kenneth Slominsky, Defendant Eric Titus, Defendant Sterr, Defendant Wiebe, Defendant Harden, Defendant Riley, Defendant Utter

and Defendant Latter jointly and severally, as follows: (a) for special damages suffered by all

Plaintiffs as proven at trial; (b) for general damages suffered by all Plaintiffs as proven at trial;

(c) for pre-judgment interest and post-judgment interest in favor of all Plaintiffs as allowed by

law; (d) for treble damages and attorneys' fees and costs incurred by all Plaintiffs; and (e) for

such other and further relief, including consequential damages in favor of all Plaintiffs, deemed

appropriate by the Court.

## JURY DEMAND

Plaintiffs respectfully demand trial by jury.

Dated this _18_ day of January, 2005.

WAYNE ABRAHAMSON, BERGMAN
BROTHERS, and WAYNE CARLSON,
Plaintiffs,

By:

Steven P. Vinton, #17817
BACON & VINTON, LLC
Attorneys at Law
416 10th Street
PO Box 208
Gothenburg, NE 69138
(308) 537-7161
and,

P. Stephen Potter, #13371
P. STEPHEN POTTER, P.C.
Attorney at Law
822 Lake Avenue
PO Box 348
Gothenburg, NE 69138
(308) 537-7119
Attorneys for Plaintiffs

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

WAYNE ABRAHAMSON, BERGMAN
BROTHERS, and WAYNE CARLSON

               Plaintiffs,

vs.

FIRST NATIONAL BANK OF HOLDREGE,
KENNETH SLOMINSKY, ERIC TITUS,
RONALD STERR, TIM WIEBE, JEANETTE
HARDEN, KIRK RILEY, MARK UTTER,
and DOUGLAS SCOTT LATTER

               Defendants.

CASE NO. CI04-209

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of February, 2005, a true and correct

copy of the Second Amended Complaint filed in this action was mailed to the following

individuals by U.S. First Class Mail, postage prepaid.

Mark Utter
4720 Birch Way
Sioux City, IA 51106

Ronald Sterr
10237 Timothy Street
Debuque, IA 52003

Jeanette Harden
747 N. Lincoln Avenue
Holdrege, NE 68949

Douglas Scott Latter
c/o Robert J. Bothe
1601 Dodge Street, Suite 3700
Omaha, NE 68102

Eric Titus
c/o Robert J. Bothe
1601 Dodge Street, Suite 3700
Omaha, NE 68102

First National Bank
c/o Robert J. Bothe
1601 Dodge Street, Suite 3700
Omaha, NE 68102

Kenneth Slominski
5008 Avenue F Place
Kearney, NE 68848

Tim Wiebe
502 W. 10th Street
McCook, NE 69001

Wayne Abrahamson, Bergman Brothers, and
Wayne Carlson, Plaintiff

By _____
Steven P. Vinton, #17817
BACON & VINTON, LLC
416 10th Street, PO Box 208
Gothenburg, NE 69138
(308) 537-7161

EXHIBIT "C"
PENGAD 800-631-6989

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

| | |
|---|---|
| WAYNE ABRAHAMSON, BERGMAN BROTHERS, and WAYNE CARLSON | CASE NO. CI04-209 |
| Plaintiffs, | |
| vs. | SECOND AMENDED COMPLAINT AND JURY DEMAND |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER, and DOUGLAS SCOTT LATTER | |
| Defendants. | |

COMES NOW Wayne Abrahamson, Bergman Brothers, and Wayne Carlson (herein "Plaintiffs"), by and through their attorneys Bacon & Vinton, L.L.C. and P. Stephen Potter, P.C., and for their Second Amended Complaint against Defendant First National Bank of Holdrege ("FNB Holdrege"), Defendant Kenneth Slominsky, Defendant Eric Titus, Defendant Ronald Sterr, Defendant Tim Wiebe, Defendant Jeanette Harden, Defendant Kirk Riley, Defendant Mark Utter and Defendant Douglas Scott Latter, state and allege as follows:

### PARTIES, RELEVANT NON-PARTIES JURISDICTION, VENUE

1.      Plaintiff Wayne Abrahamson ("Abrahmson") is a resident of Borger, Texas. Plaintiff Bergman Brothers ("Bergman") is a Nebraska General Partnership with its principal place of business in Phelps County, Nebraska. Plaintiff Wayne Carlson ("Carlson") is a resident of Holdrege, Phelps County, Nebraska. Plaintiff Stan Ourada ("Ourada") is a resident of Holdrege, Phelps County, Nebraska.

2.      First National Bank of Holdrege ("FNB Holdrege") is a national banking corporation with offices in Holdrege, Nebraska. At times material to this action, FNB Holdrege

has acted through its officers and agents, including, Defendants Kenneth Slominsky and Eric Titus.

3.      Kenneth Slominski ("Slominski") is the former president of FNB Holdrege, and is named in his former capacity and individually.

4.      Eric Titus is a current officer and director of FNB Holdrege and is named in this capacity and individually.

5.      Ronald Sterr ("Sterr") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

6.      Tim Wiebe ("Wiebe") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

7.      Jeanette Harden ("Harden") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

8.      Kirk Riley ("Riley") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

9.      Mark Utter ("Utter") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

10.     Douglas Scott Latter ("Latter") is a current officer and employee of FNB Holdrege and is named in this capacity and individually.

11.     Damrow Cattle Inc. is a Nebraska Corporation that operated a feedlot feeding its own cattle and cattle owned by third parties.

12.     Plaintiff Abrahamson is a former shareholder of Abrahamson Farms, Inc., which corporation was liquidated. Pursuant to the terms of the Plan of Liquidation of Abrahamson Farms, Inc., all claims of Abrahamson Farms, Inc. against all Defendants set forth herein were distributed and transferred to Plaintiff Abrahamson.

13.     DFF, Inc. (herein "Damrow Finance"), was an affiliate of Damrow Cattle and provided financing to Damrow Cattle's customers.

14.     Carter Feeders, Inc. (herein "Carter") is a Nebraska Corporation which from 1989 through 1999 owned and operated a cattle feed yard near Orleans, Nebraska.

15.     Pursuant to Neb. Rev. Stat. §§ 25-403.01 and 25-403.02, Phelps County is the appropriate venue for this matter.

### FACTS COMMON TO ALL CLAIMS

16.     Based upon information and belief, the following facts are stated. At all times material, Damrow Cattle, Inc. ("Damrow Cattle") operated a feedlot feeding its own cattle and cattle owned by third parties.

17.     FNB Holdrege provided Damrow Finance the funds that Damrow Finance loaned to Damrow Cattle's customers so they could finance the purchase, ownership, and feeding of cattle at Damrow Cattle's feedlot(s). FNB Holdrege also provided Damrow Cattle the financing Damrow Cattle needed to procure cattle and to meet its working capital needs.

18.     In and about 1997, and continuing through April 14, 2000 FNB Holdrege sold to First National Bank of Omaha ("FNB Omaha") participations in loans made by FNB Holdrege to Damrow Cattle and Damrow Finance. Under the terms of their participation agreement(s), the participations had the effect of reducing FNB Holdrege's loan balances owed by Damrow Cattle and Damrow Finance.

19.     In early 2000, FNB Holdrege approached FNB Omaha about having FNB Omaha refinance loans made by FNB Holdrege to Damrow Cattle and Damrow Finance.

20.     On or about April 14, 2000, at the request and inducement of FNB Holdrege, FNB Omaha, FNB Holdrege and Damrow Cattle entered into an agreement whereby FNB Omaha agreed to refinance FNB Holdrege's loans to Damrow Cattle and Damrow Finance

(hereinafter the "FNB Omaha/Damrow Cattle Take Out Loan"). The terms of such agreement
provided that FNB Omaha agreed to lend Damrow Cattle sufficient funds to pay off its loans
from FNB Holdrege, in the form of a short term "bridge note" in the amount of $1,300,000.00,
an operating note in the amount of $4,000,000.00, and a customer finance note of
$4,000,000.00. Damrow Cattle agreed to procure the agreement of Damrow Farms (Plaintiff
herein) to sell a feedlot and adjoining real estate owned partially by Damrow Farms and
partially by Damrow Cattle for the sum of $2,000,000.00, and apply the net sale proceeds, after
payment of closing costs and a first lien held by MetLife in the amount of slightly under
$1,000,000.00, to FNB Omaha $1,300,000.00 bridge note. Damrow Cattle complied with all
conditions imposed upon it by FNB Omaha and FNB Holdrege in order to refinance its debt
owed to FNB Holdrege, by selling the feedlot and real estate for $2,000,000.00, which sale was
closed on July 23, 2000. FNB Holdrege failed to apply the sale proceeds to Damrow Cattle's
debt to FNB Omaha, and instead applied the net sale proceeds after payment of MetLife first
lien to an indebtedness incurred by Damrow Cattle as a result of a settlement with the
bankruptcy trustee in the John Morken bankruptcy.

22.     At or near the time FNB Holdrege induced FNB Omaha to refinance the Damrow
Cattle loans, FNB Omaha represented to Damrow Cattle that FNB Omaha would continue to
provide financing to Damrow Cattle. In reliance on these representations, Damrow Cattle entered
into agreements to purchase wet corn and dry corn from various producers of corn, including
Plaintiffs. Damrow Cattle also entered into arrangements to feed cattle purchased by various
farmers and investors, including Plaintiff Abrahamson.

23.     In inducing these loans, FNB Holdrege intentionally provided commercial
information which was inaccurate. FNB Holdrege knew and it was also reasonably foreseeable
that the commercial information supplied by FNB Holdrege in connection with Damrow Cattle